UNITED STATES of America, Plaintiff,

v.

DICO, INC. and Titan Tire Corp., Defendants.

No. 4:10–cv–00503.

United States District Court, S.D. Iowa, Central Division.

Feb. 15, 2011.

Loren A. Remsberg, U.S. Dept. of Justice–Environment & Natural Resources, Washington, DC, for Plaintiff.

Brian D. Williams, Mark E. Johnson, Stinson Morrison Hecker LLP, Kansas City, MO, Bryan S. Hatch, Stinson Morrison Hecker LLP, Omaha, NE, for Defendants.

## ORDER

ROBERT W. PRATT, Chief Judge.

Currently before the Court is a "Motion to Dismiss" filed by Dico, Inc. ("Dico") and

1. The United States has requested oral argument; however, the Court does not believe oral argument will substantially aid it in resolving the motions. Therefore, the United States' request is denied.

2. In their motion, Defendants have included a significant amount of "background information" on a number of matters outside the pleadings. *See* Defs.' Br. at 3–6. Defendants have made a number of arguments based upon this background information. *E.g., id.* at 11. Despite these submissions, Defendants expressly disclaim any intention or desire to convert their motion into a motion for summary judgment. *Id.* at 3. The Court takes Defendants at their word and will treat this

Titan Tire Corp. ("Titan Tire") (collectively "Defendants") on January 3, 2011. Clerk's No. 4. The United States filed a response in opposition to the motion on January 28, 2011. Clerk's No. 14. Defendants filed a reply on February 7, 2011. Clerk's No. 15. The matter is fully submitted.[1]

### I. FACTUAL & PROCEDURAL BACKGROUND

■ The United States alleges that in the early 1990s, a contractor discovered polychlorinated biphenyls ("PCBs") in the insulation of three buildings owned by Dico.[2] Compl. ¶ 20; *see also* Defs.' Br. at 3–4 (defining PCBs). These buildings, which the United States refers to as "Buildings 3, 4, and 5," were located within the Des Moines TCE Superfund Site. Compl. ¶¶ 17, 20. Buildings 3, 4, and 5 were affected by the Raccoon River flood of 1993. *Id.* ¶ 21. Following the flood, "Titan Wheel International, now Titan International . . . . acquired Dico's parent, the Dyneer Corp." *Id.* ¶ 22. According to the United States, "Titan Wheel indicated . . . that it wanted to return the Dico Property to usable condition but that substantial building cleaning and renovation would be necessary before the buildings could be reoccupied." *Id.* In 1994, the United States Environmental Protection Agency (hereinafter the "EPA") issued a

motion as a motion to dismiss. However, in order to do so, the Court cannot—and will not—rely upon the Defendants' proffered "background information" or consider any arguments that would require the Court's reliance on that information. *See BJC Health Sys. v. Columbia Cas. Co.,* 348 F.3d 685, 687–88 (8th Cir.2003) (stating that a motion to dismiss is converted to a motion for summary judgment when a Court relies on matters outside of the pleadings); Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Unilateral Administrative Order for Removal Action (hereinafter the "Building UAO") to Dico related to Buildings 3, 4, and 5. *Id.* ¶ 23. The Building UAO "requir[ed] Dico to submit a work plan for cleaning the buildings and adjacent soils consistent with EPA's comments and, upon EPA's approval of the work plan to, *inter alia,* repair, seal and protect the building insulation." *Id.* Among other things, the Building UAO required that Dico encapsulate the PCB-contaminated insulation and maintain that encapsulation. *See id.* ¶¶ 24–25.

In 2003, "Dico sought EPA's permission to stop monitoring Building 4, arguing that the buildings were not being actively used." *Id.* ¶ 31. "In that letter, Dico stated that it had 'intentions of possible future demolition or dismantling of these buildings,'" but did not indicate that it had plans to demolish or dismantle the buildings by any certain date. *Id.* ¶ 32. Dico also "asked to discontinue the operation and maintenance requirements" for Buildings 3, 4, and 5. *See id.* The EPA "denied Dico's proposal by letter dated September 3, 2003, and stated that, while EPA did not necessarily object to demolition of the building, Dico was required to 'coordinate any plans for demolition of the buildings with EPA.'" *Id.* ¶ 33. In this letter, the EPA also stated that "[c]ertain disposal requirements may apply for building debris, and the EPA or state would want to oversee the demolition." *Id.*

The United States alleges that, "[I]n July 2007, Titan Tire, on behalf of Dico, arranged with Southern Iowa Mechanical ('SIM') to dismantle certain buildings on the Dico Property, including Buildings 3, 4 and 5." *Id.* ¶ 35. SIM demolished Buildings 3, 4 and 5 "between August and November 2007." *Id.* ¶ 38. Following the demolition, the debris, "including most of the PCB contaminated insulation, lighting fixtures, doors, and miscellaneous materi-

als, were disposed of at the Metro Park East Landfill in Mitchellville, Iowa, just east of Des Moines." *Id.* ¶ 39. However, "SIM transported the steel structural beams from the buildings to its facility in Ottumwa, Iowa" (hereinafter the "SIM Site"). *Id.* ¶ 41.

In September 2007, the EPA became aware that "large portions of the buildings had . . . been dismantled and essentially all of the [PCB-contaminated] insulation had been removed." *See id.* ¶ 42. The EPA inquired about this demolition, and eventually inspected the SIM Site. *See id.* ¶¶ 43–44. "When EPA inspected the SIM property, it found multiple piles of structural steel of various sizes and shapes covering an area of approximately three-quarters of an acre." *Id.* ¶ 45. "On May 16, 2008 EPA sampled beam surfaces, the soil beneath the beams, and residual bulk insulation found on the beams. Results of this sampling showed PCB concentrations substantially above acceptable levels." *Id.* ¶ 46. According to the United States, the "EPA incurred at least $94,000 in response costs related to the release or threatened release of hazardous substances at the SIM Site." *Id.* ¶ 51.

The United States filed this case on October 28, 2010, alleging that the Defendants' actions violated the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). *See* Compl. ¶ 2. Specifically, the United States claims that Defendants are liable for response costs, civil penalties and punitive damages due to the disposal of PCBs at the SIM Site. *See id.* ¶¶ 58, 63, 67.

## II. LAW AND ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, a court

must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences . . . in favor of the plaintiff." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ─── U.S. ───, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

In *Ashcroft v. Iqbal*, the Supreme Court described a "two-pronged approach" for evaluating complaints challenged under Rule 12(b)(6). *Iqbal*, 129 S.Ct. at 1949–50. First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.* at 1950.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are "merely

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

▉ The "parsing" process requires careful examination of the plaintiff's allegations, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. Indeed, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.* at 597 (internal quotations and citations omitted).

A court will "draw on its judicial experience and common sense" when determining whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1949. Thus, the Court may consider other, more likely explanations for the acts described in the complaint when determining whether the pleaded factual allegations give rise to a plausible entitlement to relief. *Id.* at 1950–51. But, the Court must always be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [a court] must also take account of [his or her] limited access to crucial information." *Braden*, 588 F.3d at 597.

## A. *First Claim for Relief*

In its "First Claim for Relief," the United States alleges that Defendants arranged for the disposal of the PCBs at the SIM Site and, therefore, they "are each liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs incurred by the United States in connection with the [SIM] Site." Compl. ¶¶ 55, 58. Defendants argue that this claim should be dismissed because it does not "state a claim for 'arranger' liability under CERCLA § 107(a)...." Defs.' Br. at 6.

■■■ "CERCLA imposes strict liability for environmental contamination upon four broad classes of" potentially responsible parties ("PRPs"). *Burlington N. & Santa Fe Ry. Co. v. United States,* —— U.S. ——, 129 S.Ct. 1870, 1878, 173 L.Ed.2d 812 (2009). "Once an entity is identified as a PRP, it may be compelled to clean up a contaminated area or reimburse the Government for its past and future response costs." *Id.* (citing *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 161, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004)). The class of PRPs at issue in this case is the class sometimes referred to as "arrangers." CERCLA defines this class to include:

> [A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated

by another party or entity and containing such hazardous substances....

*Id.* (quoting 42 U.S.C. § 9607(a)(3)).

In order to prove that Defendants are "arrangers" under CERCLA, the United States must prove that: (1) Defendants are "persons" within the meaning of CERCLA; (2) Defendants "arranged for disposal" of the PCBs; (3) Defendants "owned or possessed" the PCBs at the time such arrangement was made; and (4) the disposal was done "at any facility or incineration vessel owned or operated by another party or entity...." *See id.*

For the purposes of this motion, Defendants do not dispute that the United States has adequately alleged that they are "persons" within the meaning of CERCLA, or that the SIM Site is owned and operated by another party or entity. Defs.' Br. at 7. It also appears that Defendants do not seriously dispute the United States' contention that the release of PCBs at the SIM Site constituted "disposal" of the PCBs within the meaning of CERCLA. *See* Compl. ¶ 47; *see also* 42 U.S.C. § 6903(3) (defining "disposal"). However, Defendants assert that the United States has failed to properly allege that Defendants "arranged for disposal" of the PCBs or that Defendants "owned or possessed" the PCBs.[3] *See* Defs.' Br. at 7. The Court will consider each of these arguments in turn.

### 1. *Does the United States adequately allege that Defendants "arranged for disposal" of the PCBs?*

■■ In order to prove that Defendants "arranged for disposal" of the PCBs at the

---

**3.** Defendants assert that the United States has not identified the "hazardous substance" at issue. Defs.' Br. at 7. The Court does not agree. The United States' Complaint clearly indicates that the United States is seeking to recover response costs related to the threatened "release or threat of release of PCBs at

the SIM Site." *See* Compl. ¶ 67; *see also id.* ¶¶ 44–52. Therefore, although Defendants cast their arguments in terms of an "unidentified 'hazardous substance,'" (*see* Defs.' Br. at 7), the Court interprets Defendants' arguments as being directed toward the alleged disposal of PCBs at the SIM Site.

SIM Site, the United States must prove that Defendants took intentional steps to dispose of the PCBs. *See Burlington,* 129 S.Ct. at 1879. Defendants argue that "the [C]omplaint fails to allege any facts showing that either defendant took any 'intentional steps to dispose' of a hazardous substance" and, therefore, "fails to state a claim for 'arranger' liability upon which relief may be granted." Defs.' Br. at 12.

The United States alleges that "Titan Tire, on behalf of Dico, arranged with [SIM] to dismantle certain buildings on the Dico Property, including Buildings 3, 4 and 5." Compl. ¶ 35. Based upon the United States' allegations regarding the encapsulation-maintenance provisions of the Building UAO and the EPA's September 3, 2003 letter, it can be reasonably inferred that Defendants "planned for the disposal" of the PCBs. *See Burlington,* 129 S.Ct. at 1880 (internal quotation marks omitted). Although the Complaint does not allege specific facts regarding Defendants' intentions, the Court finds this to be neither surprising nor fatal. In analyzing the sufficiency of the United States' Complaint, the Court "must also take account of [its] limited access to crucial information." *Braden,* 588 F.3d at 597. In this case, there is crucial information—i.e., evidence regarding Defendants' intent—that is likely to be in the exclusive possession, custody or control of Defendants. Therefore, it would be unrealistic and unduly restrictive to require the United States to submit detailed pleadings about that intent. *See Riley v. Vilsack,* 665 F.Supp.2d 994, 1005 (W.D.Wis.2009) ("[W]hen an element of a claim involves the intent of the defendant, the plaintiff is limited in the facts that he can provide at the pleading stage. Of course, only the defendant knows why he took a particular action and generally the

plaintiff will not have access to a significant amount of circumstantial evidence proving his claim without discovery.").

For all of these reasons, the Court concludes that the United States' allegations in this case are sufficient to allow the court to draw the reasonable inference that Defendants took intentional steps to dispose of the PCBs in Buildings 3, 4, and 5. Therefore, the United States' allegations are sufficient to support their claim that Defendants "arranged for" the disposal of the PCBs.

2. *Does the United States adequately allege that Defendants "owned or possessed" the PCBs?*

■ Defendants argue that, in order to prevail on their case for arranger liability, the United States must prove that they owned the PCBs at the "time of disposal." Defs.' Br. at 7; *see also id.* at 12 (arguing that the United States has failed to allege that Defendants "owned or possessed" the PCBs at the time of their disposal and, therefore, has failed to state a claim for which relief may be granted). The Court does not agree. The plain language of CERCLA covers "any person who ... arranged for disposal ... of hazardous substances owned or possessed by such person...." 42 U.S.C. § 9607(a)(3). Defendants do not cite any authority—and the Court is not aware of any—that supports their contention that § 9607(a)(3) only applies to persons who "own[ ] or possess[ ]" the hazardous substance at the time of disposal. *See* Defs.' Br. at 7, 12. To the contrary, the most natural reading of the statute indicates that a liable "arranger" must own or possess the hazardous substance at the time that person arranges for the disposal of that substance.[4] *See* 42 U.S.C.

---

4. Indeed, the immediately preceding subsection of CERCLA describes another class or PRPs consisting of "any person who *at the* *time of disposal* of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of...."

§ 9607(a)(3).

 Thus, in order to prevail upon their first claim for relief, the United States must prove that Defendants "owned or possessed" the PCBs at the time their disposal was arranged. *See id.* As to Dico, the United States expressly alleges that Dico owned the PCB-contaminated buildings at the time Titan Tire arranged for them to be dismantled "on Dico's behalf." Compl. ¶¶ 17, 35. Therefore, the United States has sufficiently alleged that Dico owned the PCBs at the time their disposal was arranged. As to Titan Tire, it is true that the United States' Complaint does not expressly state that Titan Tire either "owned" or "possessed" the PCBs at the time Titan Tire arranged for their disposal. *See id.* However, the United States argues that its allegations are sufficient to allege that Titan Tire "possessed" the PCBs. *See* Pl.'s Br. at 15. The Court agrees. A party that exercises actual control over a hazardous substance "possesses" it for the purposes of CERCLA. *See United States v. Ne. Pharm. & Chem. Co., Inc. (NEPACCO)*, 810 F.2d 726, 743 (8th Cir.1986) ("The government argues Lee 'possessed' the hazardous substances within the meaning of CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), because, as NEPACCO's plant supervisor, Lee had actual 'control' over the NEPACCO plant's hazardous substances. We agree."). The facts alleged by the United States support a reasonable inference that Titan Tire exercised actual control over the PCB-contaminated buildings by arranging for them to be dismantled.[5] *See* Compl. ¶ 35. Therefore, it can also be reasonably inferred that Titan Tire had "authority or control over the manner of [the] disposal and selection of the disposal site."[6] *See* Defs.' Reply at 3. For all of these reasons, the Court concludes that the United States' allegations are sufficient to support its claim that each Defendant "owned or possessed" the PCBs at the time their disposal was arranged.

### B. Second Claim for Relief

In its "Second Claim for Relief," the United States alleges that, pursuant to CERCLA, "Dico is liable to the United

*See* 42 U.S.C. § 9607(a)(2) (emphasis added). Therefore, if Congress meant to limit "arranger" liability to persons who "owned or possessed" the substance at the time of disposal, it knew how to do so.

5. Defendants suggest that the Eighth Circuit has, in later cases, cabined *NEPACCO* to its "unique facts" and that *NEPACCO*, therefore, does not apply to this case. *See* Defs.' Reply at 2 (citing *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 810 (8th Cir.1995)). The Court does not agree. In *Vertac*, the Eighth Circuit decided "whether or not the United States 'owned or possessed' hazardous substances ... by virtue of its statutory authority ..., its presumed knowledge that the production of Agent Orange was generating hazardous wastes, and the specific actions it took to facilitate [the] production of Agent Orange." *Vertac*, 46 F.3d at 810. It is true that the Eighth Circuit distinguished *NEPACCO* in *Vertac*, but it did so in support of its conclu-

sion that "a governmental entity may not be found to have owned or possessed hazardous substances under § 9607(a)(3) merely because it had statutory or regulatory authority to control activities which involved the production, treatment or disposal of hazardous substances." *Id.* Nothing in *Vertac* indicates that actual control—if proven—is not sufficient to support a finding of arranger liability. *See id.* at 810–11.

6. Defendants' arguments to the contrary appear to be based upon their assertion that Defendants sold the buildings to SIM and, thus, SIM controlled the disposal. *See* Defs.' Br. at 13 (alluding to "SIM ... purchasing the buildings"); Defs.' Reply at 3. However, there are no facts in the Complaint indicating that any sale occurred. Therefore, the Court cannot consider any arguments based on this asserted fact, as explained in footnote 2 of this opinion.

States for a civil penalty of up to $32,500 per day for its failure to comply with the Building UAO." *See* Compl. ¶ 63. The provision of CERCLA relied upon by the United States provides that:

Any person who, without sufficient cause, willfully violates, or fails or refuses to comply with, any order of the President under subsection (a) of this section may, in an action brought in the appropriate United States district court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs or such failure to comply continues.

42 U.S.C. § 9606(b)(1).

Defendants argue that this claim should be dismissed because: (1) the United States "acknowledge[d]" that Dico complied with the Building UAO; and (2) the United States did not adequately allege facts supporting each of the "required elements" for a claim for civil penalties. *See* Defs.' Br. at 15, 17–18. The Court will address each of these arguments in turn.

1. *Does the Complaint acknowledge that Dico performed the work required by the Building UAO?*

█ First, Defendants argue that "[t]he daily penalty and punitive damages provisions ... do not apply when the party to whom an administrative order is directed complies with the order and performs the work." Defs.' Br. at 15 (citing *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 115 (D.C.Cir. 2010); *Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 389, 389 n. 9 (8th Cir.1987); and *Wagner Elec. Corp. v. Thomas*, 612 F.Supp. 736, 738–39 (D.Kan.1985)); *see also* Defs.' Reply at 4–5. According to Defendants, "the [C]omplaint acknowledges that Dico performed the work required by the [Building] UAO" and, therefore, the United States has not stated a claim for which relief may be granted.

Defs.' Br. at 15 (citing Compl. ¶¶ 24, 28, 29). The Court does not agree.

In the provisions of the Complaint cited by Defendants as "acknowledg[ing] that Dico performed the work required by the [Building] UAO" (*see* Defs.' Br. at 15), the United States alleges that:

24. Among other things, the Building UAO required Dico to repair and encapsulate in place the contaminated insulation in Buildings 3, 4 and 5. Insulation that was in too poor condition to be repaired was removed and disposed of in accordance with federal PCB disposal requirements. A coating of epoxy paint was placed over the insulation to encapsulate the PCBs. In 1994, Dico completed encapsulation of the walls and ceilings in Buildings 3, 4 and 5.

[...]

28. By letter dated May 8, 1997, EPA notified Dico that the building cleaning and encapsulation work had been completed and that the long-term operation and maintenance plan ("O & M Plan") were now in effect.

29. Dico submitted annual reports to EPA for most years from 1997 until 2005.

Compl. ¶¶ 24, 28–29.

Contrary to Defendants' contention, these provisions cannot fairly be read to constitute an acknowledgment that Dico complied with all of the terms of the Building UAO. *See* Defs.' Br. at 15. Although paragraph 24 does indicate that Dico complied with certain repair and encapsulation requirements in the Building UAO, that same paragraph also indicates that these were only *some* of the requirements. *See* Compl. ¶ 24 (noting that the completed encapsulation was required, "[a]mong other things...."). Additionally, the United States specifically alleges that "Dico violated the terms and conditions of the Building UAO by arranging for the demolition

of Buildings 3, 4, and 5 on the Dico property . . . ." *Id.* ¶ 62. This allegation is supported by factual allegations regarding, for example, the continuing nature of the Building UAO and instruction from the EPA concerning the proposed demolition of the covered buildings. *See id.* ¶¶ 28, 33. For all of these reasons, the Court cannot agree that "the [C]omplaint acknowledges that Dico performed the work required by the [Building] UAO" and, therefore, rejects Defendants' arguments that are premised upon the existence of such an "acknowledgment."

### 2. Does the Complaint sufficiently allege facts supporting all of the required elements?

Defendants also argue that this claim should be dismissed because "the [C]omplaint fails to allege that Dico's purported violation was 'willful' and 'without sufficient cause.'" Defs.' Br. at 17. Defendants assert that in order to prevail upon its claim for civil penalties, the United States has the burden to prove that any violation of the Building UAO was "willful" and that it was done "without sufficient cause." *See id.* at 18 ("Each are required elements of the asserted statutory claim."). The Court will address each of these "elements" in turn. *See id.*

#### a. Willful violation.

In order to prevail upon its claim for civil penalties, the United States must prove, *inter alia*, that Defendants willfully violated the Building UAO. *See* 42 U.S.C. § 9606(b)(1) (covering "[a]ny person who . . . . willfully violates, or fails or refuses to comply with" an EPA order). The United States has alleged, *inter alia*, that Dico had complained about the expense of maintaining the contaminated buildings and was told, in response, that "[c]ertain disposal requirements may apply" if Dico demolished the buildings. *See* Compl. ¶¶ 32–33. The United States also alleges that

although the EPA told Dico that it would need to "coordinate any plans for demolition of the buildings with EPA," Dico demolished the building without notifying the EPA. *See id.* ¶¶ 33, 44. These allegations are sufficient to allow the court to draw the reasonable inference that Defendants willfully violated the Building UAO, especially in light of the limited intent information currently available to the United States. *See generally Braden*, 588 F.3d at 597. Therefore, the United States' allegations are sufficient to support its claim that Defendants willfully violated the Building UAO.

#### b. "Without sufficient cause."

The civil-penalties provision of CERCLA applies to "[a]ny person who, without sufficient cause, willfully violates, or fails or refuses to comply with" an EPA order. *See* 42 U.S.C. § 9606(b)(1). Defendants also argue that the United States has the burden to prove that Defendants violated the Building UAO "without sufficient cause." Defs.' Br. at 18. Defendants acknowledge that the phrase "without sufficient cause" in CERCLA "is generally considered to provide for a 'good faith' defense." *Id.* at 19. Nonetheless, Defendants assert that, in this case, the burden on this issue should be shifted to the United States. *See id.* (citing *Solid State Circuits*, 812 F.2d at 392).

In *Solid State Circuits*, the Eighth Circuit considered the narrow issue of "the constitutionality of CERCLA's treble damages provision." *Solid State Circuits*, 812 F.2d at 391 n. 11. In its discussion of that issue, the Eighth Circuit stated that, generally, the burden of proof rests with the party asserting the "sufficient cause" defense:

> [T]he EPA is presumed to have acted correctly, and its decision to issue such an order may be found erroneous only if

it acted arbitrarily or capriciously. Thus, in order to establish the objective reasonableness of a challenge to an EPA clean-up order, a party must show that the applicable provisions of CERCLA, EPA regulations and policy statements, and any formal or informal hearings or guidance the EPA may provide, give rise to an objectively reasonable belief in the invalidity or inapplicability of the clean-up order.

*Id.* at 392. However, the Eighth Circuit noted that:

[I]n some instances, CERCLA itself is silent or ambiguous, and the EPA has failed to promulgate regulations or to issue position statements that could allow a party to weigh in advance the probability that the clean-up order is valid or applicable. Absent such guidance, it will also be difficult for a court to determine the reasonableness of a challenge to the order notwithstanding the presumption of validity an agency order enjoys.

In such instances, therefore, it would be patently unreasonable and inequitable for a court to require a challenging party to prove the reasonableness of its challenge to avoid imposition of treble damages. Thus, we hold that if neither CERCLA nor applicable EPA regulations or policy statements provides the challenging party with meaningful guidance as to the validity or applicability of the EPA order, *Ex Parte Young* and its progeny require that the burden rest with the EPA to show that the challenging party lacked an objectionably reasonable belief in the validity or applicability of a clean-up order.

*Id.* (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)) (footnote omitted).

■ In this case, Defendants assert that "[t]he [C]omplaint does not ... allege that EPA provided any clarifying guidance

or provided any informal hearing that would have enabled Dico to determine whether the [Building] UAO applied to the ... dismantling of the buildings." Defs.' Br. at 19–20. Therefore, according to Defendants, the United States "bears the burden of proving that Dico lacked an objectively reasonable belief that the [Building] UAO did not apply to the ... dismantling of the buildings." *Id.* at 20.

As an initial matter, it is not at all clear that the Eighth Circuit's burden-shifting analysis in *Solid State Circuits* is applicable to a motion to dismiss. *See Solid State Circuits,* 812 F.2d at 392 (considering only a due process challenge to the CERCLA punitive damages provision, not the requirements for pleading a sufficient claim for damages); *id.* at 391 n. 1 1 (noting that the Eighth Circuit was only considering a narrow issue and declining to "finally constru[e] the statute"). However, even if the Court assumes, *arguendo,* that this burden-shifting rule affects any pleading requirements, the Court cannot agree with Defendants' assertion that "[t]he [C]omplaint does not ... allege that EPA provided any clarifying guidance or provided any informal hearing that would have enabled Dico to determine whether the [Building] UAO applied to the ... dismantling of the buildings." Defs.' Br. at 19–20.

The United States alleges that Dico received a specific order, the Building UAO, with specific requirements for Dico. *See* Compl. ¶ 23. These requirements included an ongoing obligation to "maintain the encapsulation" of the PCBs. *Id.* ¶ 25. Additionally, the United States alleges that in a 2003 letter to the EPA, "Dico asked to discontinue the operation and maintenance requirements" for Buildings 3, 4, and 5 and indicated "that it had 'intentions of possible future demolition or dismantling of these buildings.'" *Id.* ¶ 32. In response to this letter, the EPA notified Dico that

"disposal requirements may apply" to any such demolitions. *Id.* ¶¶ 32–33. Therefore, the United States has alleged facts that allow the Court to draw the reasonable inference that the EPA provided Defendants with sufficient notice that "the [Building] UAO applied to the ... dismantling of the buildings." *See* Defs.' Br. at 19–20. Thus, this is not a case where Defendants are being charged with a violation of a clean-up order without "meaningful guidance as to the ... applicability of the EPA order." *See Solid State Circuits,* 812 F.2d at 392. The Court concludes that the *Solid State Circuits* burden-shifting rule does not require the United States to allege that "Dico lacked an objectively reasonable belief that the [Building] UAO did not apply to the ... dismantling of the buildings." *See* Defs.' Br. at 20. Accordingly, the Court rejects Defendants' argument that the United States' second claim for relief is deficient for failing to allege such facts.

### C. *Third Claim for Relief*

In its "Third Claim for Relief," the United States alleges that "[p]ursuant to 42 U.S.C. § 9607(c)(3), Dico is liable to the United States for punitive damages up to three times the costs the United States incurred in responding to the release or threat of release of PCBs at the SIM Site." *Id.* ¶ 67. Defendants argue that this claim should be dismissed for two of the same reasons that they argued the United States' second claim for relief should be dismissed. First, Defendants argue that this claim should be dismissed because "the [C]omplaint acknowledges that Dico performed the work required by the [Building] UAO." Defs.' Br. at 15. The Court rejects this argument for the reasons stated above in section II(B)(1) of this opinion. Second, Defendants argue that this claim should be dismissed because "the [C]omplaint fails to allege any facts supporting the conclusion that Dico 'fail[ed] without sufficient cause' to comply

with the [Building] UAO." *Id.* at 20. The Court rejects this argument for the reasons stated above in section II(B)(2)(b) of this opinion.

### III. CONCLUSION

For the foregoing reasons, Defendants' "Motion to Dismiss" (Clerk's No. 4) is DENIED.

IT IS SO ORDERED.